**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-1344**

———————

HOTEL ROANOKE CONFERENCE CENTER COMMISSION,

                              Plaintiff - Appellant,

    versus

THE CINCINNATI INSURANCE COMPANY,

                              Defendant - Appellee.

———————

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Samuel G. Wilson, Chief District Judge.  (CA-03-109-SGW-GC)

———————

Argued:  December 1, 2004          Decided:  January 6, 2005

———————

Before WILKINSON, TRAXLER, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant.  Phillip Verne Anderson, FRITH, ANDERSON & PEAKE, Roanoke, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This diversity case involves an insurance coverage dispute governed by the laws of Virginia. The Hotel Roanoke Conference Center Commission (the Commission) appeals from the district court's order granting summary judgment in favor of Cincinnati Insurance Company (Cincinnati). For the reasons that follow, we affirm.

I.

The Commission owns the Conference Center, which is physically attached to the Hotel Roanoke (the Hotel) in Roanoke, Virginia. The Hotel is owned by Hotel Roanoke, LLC, a business owned and operated separately from the Commission and Conference Center.

In 1994, the Commission and the Hotel entered into a "Deed of Easements," which granted the Hotel appurtenant easements, exclusive use rights, and nonexclusive use rights in various areas of the Conference Center. Construction of the Conference Center was completed in 1995, and was designed to incorporate the Hotel, which would provide the accommodations for most of those attending events at the Conference Center. Cincinnati provided insurance coverage under a commercial general liability policy (CGL policy) and an "umbrella" liability policy with the Hotel as a named insured and the Commission as an additional insured.

2

Unfortunately, the Conference Center was built over an area filled with steel slag which expanded over time and thereby created serious structural problems for the Conference Center as well as risk to the Conference Center's guests and employees. Although the slag fill problems caused no physical damage to the Hotel, the Hotel lost a significant amount of revenue during the time that the Commission carried out the repairs to the Conference Center from January to May 2001. The Commission's closure of the Conference Center to remove the slag and repair the property damage caused some of the Hotel's previously booked guests to go elsewhere, the Hotel's restaurant and catering service to close for a month, and some of the Hotel's rooms to be taken out of rotation due to construction noise.

Pursuant to its rights under the Deed of Easements, the Hotel submitted a claim to the Commission for the lost revenue and other expenses incurred during the months the Conference Center was closed for repairs. The Commission ultimately agreed to pay the Hotel $678,591 in exchange for a release from liability. The Commission then sought indemnification for the damages paid to the Hotel from Cincinnati under the CGL and umbrella policies. Cincinnati denied the claim and the Commission brought this suit seeking reimbursement from Cincinnati.

The district court granted summary judgment in favor of Cincinnati, finding that the Commission was not entitled to

3

coverage under the CGL and umbrella policies.  The Commission appeals from this order.  For the reasons set forth within, we affirm.

II.

A.

The "Insuring Agreement" constituting the CGL policy provides that: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . . [that is] caused by an 'occurrence.'"  J.A. 107. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . . [and] [l]oss of use of tangible property that is not physically injured." J.A. 115. Cincinnati agreed at oral argument that the loss of use of portions of the Hotel satisfies the CGL policy's definition of property damage.  Thus, the central issue on appeal is whether the Hotel's revenue losses and other expenses were caused by an "occurrence" as defined by the CGL policy.[*]

---

[*]    There are other disputed issues on appeal, such as whether the CGL policy provides coverage for contractual claims arising out of a breach of the Deed of Easements and whether the Commission, as an "additional insured," may recover damages arising from the operations of its own premises as opposed to damages arising from the operation of the premises of a "named insured." Because other grounds readily dispose of the coverage question in this case, the court need not reach these issues.

4

The CGL policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 115. The Commission argues that the use of the steel slag during construction was an "occurrence," as contemplated by the CGL policy, causing the Commission's liability to the Hotel. We disagree.

There is no dispute that the Commission was unaware the slag had been used as fill or problems with the foundation would develop because of the slag. From the Commission's perspective, therefore, the use of the slag and the resulting property damage to the Conference Center is likely an unexpected and unanticipated occurrence or, stated another way, an accident as contemplated under the CGL policy. The use of slag, however, caused no property damage to the Hotel. In this respect, the slag failed to give rise to the Commission's liability to the Hotel. Rather, the Commission's liability to the Hotel arose out of the Commission's breach of the Deed of Easements. The Commission breached the Deed of Easements when it undertook repairs to the Conference Center in a manner which caused the Hotel lost revenues and other expenses.

To obtain coverage under the CGL policy for its liability to the Hotel, the Commission must show that its breach of the Deed of Easements qualifies as an "occurrence" or accident under the CGL policy. The evidence in the record, however, indisputably demonstrates otherwise. The Commission's breach of the Deed of

5

Easements was the result of a careful, studied decision to close the Conference Center and proceed with repairs in a deliberately chosen manner. In fact, in the process of making this decision, the Commission's attorney acknowledged that the closure of the Conference Center for repairs "necessarily would diminish the Hotel Roanoke's revenues." J.A. 358.

The Commission contends that certain admissions of Cincinnati corporate executives establish that the slag problems amount to "occurrences" which gave rise to the Hotel's claims against the Commission under the CGL policy. A reading of these executives' depositions, however, makes clear that the admissions address claims held by the Commission against the architects, engineers, and contractors regarding the faulty design and construction of the Conference Center. These statements in no way suggest that the Hotel's claim against the Commission arising out of the Commission's breach of the Deed of Easements constitutes an "occurrence" within the meaning of the CGL policy.

Because the Commission thoroughly considered its actions with respect to repairing the Conference Center and recognized that such repairs would cost the Hotel revenue losses, the Commission's breach of the Deed of Easements cannot be considered an accident or an occurrence covered by the CGL policy. See Utica Mut. Ins. Co. v. Travelers Indem. Co., 286 S.E.2d 225, 226 (Va. 1982) ("An intentional act [by the insured] is neither an 'occurrence' nor an

6

'accident' and therefore is not covered by the standard policy."). This result, moreover, comports with the CGL policy's exclusion of coverage for "'property damage' expected or intended from the standpoint of the insured." J.A. 107 (emphasis added). The Commission unquestionably understood that the closure of the Conference Center and repair work would cause the Hotel lost revenue.

## B.

Cincinnati also issued an "umbrella" liability policy covering certain claims excluded under the CGL policy. The Commission contends that if the CGL policy fails to cover the Hotel's claim against it, then the umbrella policy provides coverage for the claim. Similar to the CGL policy, the umbrella policy covers claims for property damage caused by an occurrence. The umbrella policy defines "occurrence" as "an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in . . . property damage." J.A. 329. For the same reasons the Commission's breach of contract was no accident, the Commission cannot demonstrate that its breach of contract, which was "a happening or event," was "unexpected[] or uninten[ded]." Because the claim against the Commission fails to involve an occurrence as defined by the umbrella policy, there is no coverage for the Commission's claim under the umbrella policy.

7

III.

The Commission bears no legal liability for the use of the slag. To this end, the Commission asserted and settled its claims against the architects, engineers, and other parties who were involved in the defective design and construction of the Conference Center. Likewise, the Commission cannot claim that the use of the slag gave rise to its liability to the Hotel. The Hotel's claim against the Commission--the claim for which the Commission seeks indemnification under the CGL and umbrella policies--arose as a result of the Commission's decision to proceed with the Conference Center's repairs in a manner that caused the Hotel to suffer financially. That action by the Commission is not an occurrence as defined under the CGL and umbrella policies. The district court, therefore, properly granted summary judgment in favor of Cincinnati.

AFFIRMED